Willis D. Owens v. Commissioner. Julian B. Owens v. Commissioner.
Owens v. Commissioner
Docket Nos. 14390, 14391.
United States Tax Court
1950 Tax Ct. Memo LEXIS 231; 9 T.C.M. (CCH) 281; T.C.M. (RIA) 50082; March 30, 1950
*231 Needham A. Graham, Jr., Esq., for the petitioners. S. Earl Heilman, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings were consolidated for hearing and involve deficiencies in income tax for 1943 in the amount of $17,900.13 in Docket No. 14390 and $19,654.88 in Docket No. 14390 and $19,654.88 in Docket No. 14391. The primary issue is whether the wives of petitioners were for income tax purposes members of a partnership doing business in the name of Owens Construction Co. Other issues involve deductions for depreciation in 1942 and 1943 and net operating loss carry-backs in 1944 and 1945. Petitioner Julian B. Owens filed his returns with the collector for the district of Alabama and the other petitioner filed his return for 1942 with the same collector and his returns for 1943 and 1944 with the collector for the district of Florida. Findings of Fact For many years prior to 1939 the petitioners, who are brothers, worked for their father, who was engaged in the business of laying sewer and water lines. In 1939 or 1940 the petitioners formed a partnership under the name of J. B. Owens, hereinafter sometimes *232 referred to as the Owens partnership, to engage in the same kind of business. The wife of petitioner Julian B. Owens, Neta B. Owens, was employed by the Owens partnership from prior to 1942 to the time of its termination in 1945 at a salary of about $40 a week. On September 18, 1942, the petitioners and their wives and S. A. Weaver, who had worked for petitioners' father prior to 1939 or 1940 and was superintendent for the Owens partnership, executed an agreement effective on that date for the formation of a partnership under the name of Owens Construction Co. to engage in the general contracting business, including the laying of water, gas, sewer and other pipe lines. The instrument provided for a capital of $10,000, 25 per centum of which was to be contributed by each petitioner, 20 per centum by each wife, and the remainder by Weaver, and for the sharing of profits and losses in the same proportions. Other provisions provided for a monthly salary of $500 to each petitioner and a weekly salary of $100 to Weaver, the salaries to be treated as an expense in computing profits and losses of the partnership. The instrument contained a provision that contracts for work or furnishing *233 material in excess of a blank amount were to be made only by joint action of petitioners. The amount was never inserted in the agreement. The capital contributions specified in the partnership agreement were made in cash by the respective parties, and deposited before the close of the month in a bank account opened in the name of the Owens Construction Co. Petitioner Julian B. Owens withdrew from the Owens partnership to make his contribution. About September 30, 1942, he made a gift of $2,500 to his wife by means of a check drawn on the bank account of the Owens partnership, the amount of which check was charged to his drawing account on the books of that firm. It was a check he gave her "for her to put up," as contribution to the new "partnership." The check, with a deposit of $347.85, was deposited in her individual bank account on September 30, 1942, and increased her credit balance therein to $3,483.18. On the same day her check for her contribution of $2,000 was deposited in the bank account of the Owens Construction Co. The check was charged to her bank account on October 1, 1942, and left a balance therein of $1,483.18. Petitioner Julian B. Owens and his wife discussed the *234 formation of the Owens Construction Co. and probably discussed what she should do with the gift of $2,500. The transaction was that he gave her the $2,000 for her to put in the new "partnership" and she did so. At some undisclosed time petitioner Julian B. Owens gave his wife a check for $2,000 for deposit in her bank account to keep it from being overdrawn. The money has not been repaid and he includes the amount as an asset in financial statements upon the ground that when furnishing that kind of a report he is making a statement "as man and wife." In 1942 or 1943 he gave his wife a deed for his interest in their home in Birmingham, Alabama. The gifts of his interest in the home and the $2,500 were made as contributions to the future financial security of the donee. The Owens Construction Co. was formed primarily to do subcontract work. The Owens partnership operated with nonunion employees. One of the purposes for forming the Owens Construction Co. was to work on projects being carried out by union labor. The Owens Construction Co. performed work on four projects, three as subcontractors, one of which was for the Owens partnership, and one as the prime contractor. Julian B. *235 Owens conducted most of the negotiations for the contracts and prepared all of the estimates. None of the contracts were signed by the wives. Julian B. Owens had a wide acquaintance among contractors and could have obtained the contracts for either the Owens partnership or the Owens Construction Co. S. A. Weaver was a skillful employee and he was permitted to become a member of the Owens Construction Co. as an incentive to refrain from seeking employment elsewhere. He was general manager. The wives were permitted to enter into the partnership arrangement because petitioners "wanted them to have an income" and in order "to keep them satisfied." The Owens Construction Co. maintained books in which entries were made for contributions of the partners, credits were given each partner for his or her share of the earnings and charges were made in their accounts for withdrawals they made. Neta B. Owens never turned over to her husband any of the earnings of the Owens Construction Co. S. A. Weaver sold his interest in the Owens Construction Co. on September 15, 1944, to his partners in order to enter the contracting business for his own account. On the same day the remaining partners entered *236 into an agreement for the continuation of the business under the same name. The instrument recites that each petitioner had contributed 27 1/2 per centum of the capital and each of the wives, 22 1/2 per centum. Provision was made in the instrument for sharing profits and losses in the same proportions. Other terms of the agreement do not differ from like provisions in the partnership agreement entered into on September 18, 1942. The new partnership discontinued business in 1945. The Owens Construction Co. never owned any equipment, with the possible exception of a small amount, which it acquired and sold at undiclosed times. It rented from the Owens partnership and others machinery and equipment to perform its construction contracts. During the years 1942 to 1945, inclusive, the Owens partnership owned and used in its business, automobiles, trucks, trailers, welders, tractors, bulldozers, and other equipment and machinery. The equipment on hand January 1, 1942, was acquired at a cost of $50,610.44 and had a book value of $41,057.08 at that time. Except for four pieces of machinery, costing about $3,700, all of the property was acquired in 1941. The property acquired in 1941 included *237 two speeder-link belt drag lines at a cost of about $13,000 each, a trencher at a cost of $8,052, and two tractors with bulldozer attachments at a total cost of $5,237. During 1942 it purchased various kinds of light and heavy equipment, the latter at a cost of $40,075.13. Prior to 1942 the Owens partnership depreciated its equipment at the rate of 25 per centum per year. During the years 1942 and 1943 it claimed a depreciation rate of 50 per centum on automobiles, trailers, trucks, and a used welding machine; 10 per centum on furniture and fixtures; 15 per centum on a calculator, and 40 per centum, a composite rate, on the remainder of its machinery and equipment. Depreciation at accelerated rates was not claimed in 1944 and 1945. Most of the work performed by the Owens partnership in 1942 and 1943 was for the United States at airports and cantonments in Alabama, Mississippi, Florida, and Tennessee. The work was done under abnormal conditions on account of the condition of the soil being excavated and the short time allowed within which to complete the contracts, and at times working conditions were unfavorable. The length of time the equipment was used each working day depended *238 upon the receipt of material. At an undisclosed number of times, some of it was used from 20 to 24 hours at a time. Operators were changed frequently, and efficient ones were hard to obtain. At times heavy machinery would have to be moved two or three times a day. No time was taken to do major overhauling work on the equipment. The additional use to which the equipment was put caused additional wear and tear and caused more breakdowns and repair work. During 1943 the partnership employed a machine mechanic, who corrected defects in machinery and made some repairs to them. In its return for 1943 the partnership deducted $8,940.10 for repairs and repair parts and $11,446.45 for equipment repairs and parts. In 1944 the Owens partnership sold for $33,071.75 equipment which had been acquired in 1941, 1942, and 1943, at a cost of $33,829.63, and on which it had claimed depreciation in the amount of $28,561.42. Five of the eight purchasers of the equipment were engaged in the construction business. Upon the dissolution of the Owens partnership in 1945, the equipment on hand was distributed to the petitioners. The petitioners sold some of their equipment for prices in excess of the book *239 values to the partnership. Julian B. Owens still has some of the equipment he acquired from the partnership. For the years 1942 and 1943 the Owens partnership reported ordinary net income of $154,618.52 and $150,380.92, respectively. For the period September 8, 1942, to December 31, 1942, and the year 1943, the Owens Construction Co. reported ordinary net income of $65,152.99 and $71,474.31, respectively, distributable, as follows: 1942
1943 [1]
J. B. Owens
$16,688.25
$18,768.58
W. D. Owens
16,688.24
18,768.58
N. B. Owens
12,150.60
11,214.86
A. S. Owens
12,150.60
11,914.86
S. A. Weaver
7,475.30
10,807.43 In 1944 each firm reported a net loss. In 1945 the Owens partnership reported ordinary net income of $1,079.85 and the Owens Construction Co. reported a net loss. The Owens partnership claimed in its returns and was allowed depreciation as follows for the years 1942 to 1945, inclusive: 1942
1943
1944
1945
Claimed
$35,870.48
$45,673.54
$17,052.98
$1,881.43
Allowed
17,648.84
23,393.11
6,038.32
5,270.61
The respondent allowed for the years 1942, 1943, and 1944, depreciation based upon a useful life of two *240 to five years for automobiles; three or five years for trucks; four to six years for machinery and equipment, except for one tractor and one bulldozer, which were given a life of eight years; ten years for a calculator; and twenty years for furniture and fixtures. In determining the tax liability of each petitioner for 1942, respondent allowed as a deduction a net operating loss carry-back based, in part, upon an operating loss of the Owens partnership. The respondent did not allow petitioner Julian B. Owens a carry-back loss deduction in 1943. The parties to the partnership agreements executed on September 18, 1942, and September 15, 1944, had no intent that the wives of petitioners join with the other parties thereto in good faith and with a business purpose in the conduct of a business in the name Owens Construction Co. Opinion The status of the Owens Construction Co. for the purpose of the question here involved requires a consideration of all of the facts. , on the subject, states, inter alia: " The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective *241 standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" The wife of Julian B. Owens worked for the Owens partnership but the evidence does not establish, and no contention is made by petitioners, that she or Alyce S. Owens, the wife of Willis D. Owens, performed any service for the Owens Construction Co. Each in form contributed $2,000 to the partnership. The evidence does not disclose the source of the contribution made by Alyce S. Owens, and it may not be assumed under the burden of proof required of petitioners that it was made out of her own funds. Concerning the contribution of Neta B. Owens, we know that part of it came from a gift by her husband on or about the same *242 day. The evidence on the circumstances surrounding the gift is confined to the testimony of her husband, the only witness at the hearing. He testified that they discussed the formation of the partnership, in what particulars not being shown, and that they probably discussed the use to be made of the gift. He also testified that the gift of the house was made "for the same reason you take out life insurance and make it payable to your wife," and when asked whether the gift of the check for $2,500 was made for the same purpose, he replied "I would say so." The testimony, viewed in the light of what was concurrently or promptly done with part of the proceeds of the check, indicates discussion of, and an understanding on the subject, and, more specifically, that the husband gave the wife the check so that she could "put up" money in the "partnership." Though he denied that the $2,500 was given to her with the intention and agreement that she would invest it in Owens Construction Co., such denial is inconsistent with the other evidence, particularly his statement that the check was one he gave her "for her to put up." Moreover, obvious effort to evade the question, as well as others, and *243 the demeanor of the witness on the stand, contributed to rejection of the denial. It is to be recalled that this witness, the only one out of the four alleged partners to testify, in fact, the only witness, is not among the "disinterested persons" whose testimony is, the Culbertson case says, to enter into consideration of this question. We, of course, do not eliminate statements by the parties, but self interest is to be considered. In any event, we find nothing in the evidence proving a gift with no strings attached, followed by negotiations to become real partners in an enterprise. On the contrary, the transaction, we have found on all the evidence, was that he gave her the money for her to put up, in the new "partnership," and she did so. Under the circumstances, we can not hold that Neta B. Owens accepted the gift without a condition that $2,000 thereof be contributed to the partnership or that she invested capital originating entirely with her. See . The nature of the services of Neta B. Owens to the Owens partnership was not shown and we have no basis for saying that she could have performed vital services for the Owens Construction *244 Co. We know nothing about the ability of Alyce S. Owens to contribute services, important or otherwise. They were both permitted to become partners to keep them satisfied and to give them a source of income. Motives of that kind, without greater explanation than appears on the record, do not constitute a real business purpose. That earnings of the partnership were credited to accounts of the wives is not of great importance if others earned the income. . Under the proof here, petitioners and Weaver were the only members of the partnership who possessed qualifications to be a primary factor in the production of income. Obviously, their ability, not the small capital contributions, was the chief factor for the high income earned by the enterprise during the taxable year. Withdrawals of the wives were charged to their accounts. But we do not know the extent of, or circumstances surrounding the withdrawals, or the final dispositions made of them. That being the case, we can not find that the wives obtained, free of obligation to their husbands, or actually enjoyed the use of any of the earnings of the partnership. Petitioners cite, in support *245 of their contention, , and , both of which were decided prior to the Culbertson case, supra. Issues of the kind involved herein must turn upon their own peculiar facts. One important fact in the cases relied upon, not present here, was an investment of original capital by the partners, which, with other facts, was regarded by the court as sufficient to require a conclusion contrary to that reached in The importance, among other elements, of original capital and vital services to the partnership in considering the ultimate question is shown by the opinion of the same court in the more recent case of . Further discussion would serve no useful purpose. We conclude from consideration of all the evidence that the parties did not in good faith and acting with a business purpose intend to join together as partners to conduct a business. In so concluding, we have not applied objective tests or standards but have considered and weighed all the evidence in the manner required by the Culbertson *246 case. We hold that the respondent did not err in taxing to each petitioner the distributable share of the earnings of the partnership of his wife. The terms of the purchase of Weaver's interest in the partnership is not shown in the evidence, and, accordingly, we can not find that the wives invested any original capital in connection with the formation on September 15, 1944, of an new partnership with petitioners. That new enterprise seems to be regarded by petitioners as a continuation of the Owens Construction Co. and requiring no special treatment here. We find nothing in the evidence to warrant a conclusion with respect to the new partnership contrary to that reached concerning the old one. The point of difference under the depreciation question, involving the years 1942, 1943, and 1944, is whether the Owens partnership should have been allowed a higher rate due to increased use under unfavorable conditions in carrying out war contracts. The straight line method employed by the partinership until 1942 should not be changed without a compelling reason. . The petitioners had the burden of showing the reasonableness *247 of the accelerated rates for which they contend. Included in their burden was proof that increased usage and other conditions shortened the life of the property. ., . The petitioners observed the property when visiting the sites on which it was being used and judged its condition by breakdowns, but it does not appear that an examination of it was made to ascertain to what extent, if any, increased use was shortening its life. The witness testified that "I have never been able to determine what life a piece of machinery has" Large sums were expended for parts and repairs to maintain the equipment in operating condition. The belief of the witness was that the equipment would have no more than scrap value after 1943 due to lack of work for its employment. That the equipment had more than junk value after 1943 is shown by the fact that part of it was sold by the partnership in 1944, and prior to the end of the period here involved, for almost as much as its cost, and after the dissolution of the partnership, the petitioners sold some of it for more than the book value to the partnership. The *248 history of the property after 1943 goes far to show that replacements and repairs made good any extra wear and tear due to additional use, even under unfavorable working conditions, and that the estimates made for accelerated depreciation lacked a proper basis. We find no evidence in the record to warrant any change in the allowances made by the respondent, and, accordingly, we sustain his adjustments. The carry-back loss questions are not discussed upon brief. As we understand the statements made by the parties at the hearing, our conclusion on the partnership and depreciation issues disposes of the amount of the net operating loss carry-back in 1944. Petitioner Julian B. Owens alleged as an additional error, the failure of the respondent to allow an alleged operating loss in 1945 in the amount of $5,584.58 as a deduction in 1943. It appears from the opening statement of his counsel that the return for 1945 was not audited until after the petition herein was filed and, consequently, the matter of a deduction in 1943 for an operating loss sustained in 1945 was not considered by the respondent when determining the deficiency. It appears that no part of the operating loss, if any, *249 resulted from adjustments for depreciation, for the respondent increased the amount of the allowance claimed by the partnership. In any event, due to the condition in which we find the record, the amount of the carry-back losses, if any, will be left for computation under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. With salaries.↩